DARREN M. HARRIS, ESQ., Bar No.: 190399
**SPRAY, GOULD & BOWERS LLP**
2 Corporate Park, Suite 201
Irvine, CA 92606
Telephone: (949) 387-4444
Facsimile: (949) 387-4544
dharris@sgblaw.com

Attorneys for Plaintiffs SHIRLEY GARCIA and ANTHONY GARCIA

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION – RIVERSIDE COURTHOUSE

| | |
|---|---|
| SHIRLEY GARCIA and ANTHONY GARCIA, as surviving heirs and successor in interest to decedent JOSEPH ANTHONY GARCIA,<br><br>    Plaintiffs,<br><br>    vs.<br><br>COUNTY OF RIVERSIDE; AARON MARTIN, an individual; KRISTINE ZANETEL, an individual; SCOTT OVERTON, an individual; ADRIAN COTOIA, an individual; and DOES 1-50.<br><br>    Defendants. | CASE NO.: 5:15-cv-2093<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1) 42 U.S.C. § 1983 – (Violation of 14th Amendment);<br>2) 42 U.S.C. § 1983 – (Violation of 8th Amendment)<br><br>**SUPPLEMENTAL STATE CLAIMS**<br><br>3) Negligence / Wrongful Death<br><br>**DEMAND FOR JURY TRIAL** |

- 1 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

PLAINTIFFS SHIRLEY GARCIA and ANTHONY GARCIA (hereinafter "Plaintiffs") as surviving heirs and as successor-in-interest for their deceased son, JOSEPH ANTHONY GARCIA ("decedent"), and alleges as follows under California and Federal law:

## I. JURISDICTION

1. This case is brought pursuant to 42 U.S.C. § 1983. Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1342. The court also has pendent jurisdiction over the state claims, and supplemental jurisdiction over all Defendants herein.

## II. VENUE

2. The claims alleged herein arose in the County of Riverside, California. Venue lies in the Central District of California. 28 U.S.C. §1391(b)(2).

## III. PARTIES

3. At all times herein mentioned, Plaintiffs were residents of the City of Rialto, County of San Bernardino and the State of California. At the time of the events giving rise to this action, decedent was incarcerated at the Southwest Detention Center in the County of Riverside, State of California.

4. At all times herein concerned, Defendant RIVERSIDE was a municipality and/or governmental entity operating under a Charter, organized and incorporated under the laws of the State of California, and located in the southern portion of the State of California. Defendant RIVERSIDE is liable through application of *respondeat superior* pursuant to §815.2 of the California Government Code for the acts of its employees named herein who at all times alleged herein were acting in the course and scope of their employment with said public entity.

5. Plaintiff is informed and believes and thereon alleges that Defendant RIVERSIDE was the employer of individual Defendants AARON MARTIN, KRISTINE ZANETEL, SCOTT OVERTON, ADRIAN COTOIA, and DOE Defendants.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

6. Upon information and belief, Defendant AARON MARTIN (hereinafter "MARTIN") is and was, at all times relevant herein to the matters alleged in this complaint, a Correctional Sergeant employed by RIVERSIDE and was acting within the course and scope of his employment and was acting under color of law.

7. Upon information and belief, Defendant KRISTINE ZANETEL (hereinafter "ZANETEL") is and was, at all times relevant herein to the matters alleged in this complaint, a Correctional Deputy employed by RIVERSIDE and was acting within the course and scope of her employment and was acting under color of law.

8. Upon information and belief, Defendant SCOTT OVERTON (hereinafter "OVERTON") is and was, at all times relevant herein to the matters alleged in this complaint, a Correctional Deputy employed by RIVERSIDE and was acting within the course and scope of his employment and was acting under color of law.

9. Upon information and belief, Defendant ADRIAN COTOIA (hereinafter "COTOIA") is and was, at all times relevant herein to the matters alleged in this complaint, a Deputy employed by RIVERSIDE and was acting within the course and scope of his employment and was acting under color of law.

10. Plaintiff SHIRLEY GARCIA is the surviving mother and heir at law of decedent, deceased, and therefore is entitled under Sections 377.30 and 377.60 of the California *Code of Civil Procedure* to bring and maintain the present actions for herself as surviving heir and successor in interest to decedent including those for the violation of decedent's civil rights for relief enumerated herein. Plaintiff ANTHONY GARCIA is the surviving father and heir at law of decedent, deceased.

11. At all times herein concerned, DOES 1 through 50 inclusive, were correctional deputies, deputies, officers, agents and/or servants and/or employees of the defendant, RIVERSIDE. Said defendants were acting within the course and scope

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

of their authority as such agents and/ or servants and/or employees, with the permission and consent of their co-defendants, and each of them.

12. The true names and/or capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 50, inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiffs will amend this Complaint to state the true names and capacities when the same have been ascertained.

13. Plaintiffs are informed and believe, and upon such information and belief allege, that each of the defendants, as well as those designated as a DOE is legally responsible in some manner for the events and happenings referred to, and legally caused injury and damages to the Plaintiffs as hereinafter set forth.

## IV. DECEDENT'S BACKGROUND

14. Decedent JOSEPH ANTHONY GARCIA was arrested in the COUNTY OF RIVERSIDE and was admitted to California's Patton State Mental Hospital on or about January 6, 2015. Decedent had a history of mental health problems, including a diagnosis of manic depression, paranoia, and schizophrenia. Decedent was also prescribed numerous medications for his mental health.

15. On or about July 28, 2015, decedent was booked as an inmate into the Robert Presley Detention Center.

16. On or about July 31, 2015, decedent was transferred from Robert Presley to the Southwest Detention Center, located at 30755 Auld Road, Murrieta, California.

17. At all times, Defendants knew, or at the very least should have known, that decedent had serious mental health problems and that he had been transferred from Patton State Mental Hospital with his mental health diagnoses.

18. At all times, Defendants knew, or at the very least should have known, that decedent posed a significant risk to himself and others if allowed to be around others while unsupervised or closely monitored.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

19. On August 21, 2015, Defendants MARTIN, ZANETEL, OVERTON, and MARTIN were assigned to the "E" pod of the Southwest Detention Center, which houses inmates with mental health needs.

20. On or about August 21, 2015, Defendants MARTIN, ZANETEL, OVERTON, and MARTIN placed decedent into a cell with Robert Lee Thomas, who was known to be incarcerated on charges of murder and other crimes.

21. On August 21, 2015, Richard Lee Thomas pushed the emergency button in his cell requesting deputies to respond to the cell. Thomas and decedent were the only two persons within the cell. The deputies discovered the decedent lying dead on the cell floor.

22. The investigation into decedent's death concluded that decedent had been strangled to death by Richard Lee Thomas while in the custody of RIVERSIDE.

## V. DEFICIENCIES IN RIVERSIDE'S CARE AND SUPERVISION OF INMATES WITH MENTAL HEALTH NEEDS

23. RIVERSIDE has one of the largest jail systems in California, with nearly 4,000 men and women held in five detention facilities. Decedent was one of these individuals.

24. While decedent was locked up in RIVERSIDE's jail system, he faced cruel and inhumane deficits in mental health care. Defendant RIVERSIDE has known for years that its inadequate mental health care places prisoners, such as decedent herein, at a serious risk of harm, but RIVERSIDE has failed to take the necessary steps to mitigate the risk. As a result, prisoners in the Riverside jails, like the decedent herein, are subjected to policies and practices that systematically deprive them of their constitutional right to basic life-saving care.

25. RIVERSIDE has a policy and practice of failing to provide proper mental health care, supervision, and monitoring of prisoners with mental health problems, and is deliberately indifferent to the risk of harm, injury, and death to prisoners.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

RIVERSIDE often denies or delays care, supervision and/or monitoring, causing unnecessary pain and suffering as well as physical injury to the prisoners with mental health problems.

26. RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN failed to provide proper mental health care, supervision, and monitoring of decedent, whom Defendants knew had serious mental health problems. At all times, Defendants were deliberately indifferent to the risk of harm, injury, and resulting death to decedent. RIVERSIDE and MARTIN, ZANETEL, OVERTON, and MARTIN failed to care, supervise and/or monitor the decedent, causing unnecessary pain and suffering as well as death to the decedent with known mental health problems.

27. RIVERSIDE has known that its jail screening and intake process fails to adequately identify and treat the medical and mental health problems of newly arriving prisoners.

28. Insufficient numbers of nursing staff are available to identify and evaluate medical conditions on intake, resulting in dangerous delays in treatment and dangerous placements of prisoners with others. This results in high-risk prisoners do not have histories taken, physical assessments, or treatment plans.

29. As a result, prisoners (such as decedent herein) are placed at serious risk of harm.

30. Initial mental health screening at the jails is faulty because it is performed by untrained custody staff, a practice that Riverside Sheriff Stanley Sniff knows is inadequate and dangerous because, as he states, "correctional officers may not recognize hidden medical and/or mental health problems that could be best observed by a medical/mental health expert. This could result in delaying needed treatment." Appropriate screening is particularly important since, according to the Sheriff, "the time period immediately following admission to a jail is the most dangerous time for

an inmate, and over half of in-custody deaths occurred within one month of admissions, with 24% of deaths occurring within two days of admission."

31. Many of the deficits described herein stem from the inadequate health care staffing levels maintained by Defendant in the jails. There are simply not enough doctors, nurses, mental health providers, pharmacists, or medical records staff to meet the needs of the population.

32. Defendant RIVERSIDE's policy and practice of severely understaffing health care positions in the jails is long standing and has been repeatedly censured by the county Grand Jury. In 2010, the Grand Jury found that "[m]ental health staff is not available in any county jail facility in sufficient numbers to identify and treat in an individualized manner those treatable inmates suffering from serious mental disorders." The Grand Jury Report released on June 14, 2012, states the problem in clear terms:

> In July, 2011, DMH was advised. . . .that the medical/mental health staffing levels in county jails needed to be restored to 2007 levels, in order to be in compliance with [state law]. As of this writing, the Grand Jury learned through sworn testimony that during the eight months following the 2010-2011 Grand Jury report, DMH staffing levels were allowed to decrease even further.

33. According to the independent Inmate Medical Quality evaluators, invited by Sheriff Sniff to identify deficiencies in jail health care, "[t]he request for medical care exceeds the capability of the staff to meet the demands." The Detention Health Services administrator agreed, admitting that "the demand exceeds the resources available to provide the requested services."

34. A crucial element of an adequate mental health care delivery system is an appropriate means to assess and monitor patients who exhibit or contemplate self-harming behavior or behavior which makes them susceptible to being harmed by others. Here, too, RIVERSIDE's practices fall far short of acceptable mental health care procedures. Prisoners believed to be suicidal or self-harming or at risk of being

- 7 -
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

harmed by others are placed in a barren cell with only a rough smock to wear and a hole in the ground to relieve themselves. The so-called "safety cells" are often filthy and stink of the urine and feces that is visible on the walls and floor. Patients are left in the cells for many days, with inadequate monitoring or supervision and no meaningful treatment, under lights that are never turned off.

35. Defendant RIVERSIDE has known for years of the significant risk of harm to inmates with mental health problems from its inadequate jail health care system and has failed to take reasonable steps to mitigate the risk to such prisoners.

36. Defendant RIVERSIDE has for many years intentionally underfunded mental health care for inmates. The lack of infrastructure and staff to provide care, supervision, and monitoring of mental health patients has resulted, in Sheriff Stanley Sniff's words to the Board of Supervisors, "in a crisis in the jail system."

37. RIVERSIDE's own Grand Jury has concluded that dangerous deficits in mental health care services in the jails threaten the lives and health of the thousands of men and women they hold.

38. The severe deficiencies in mental health care services in RIVERSIDE'S jails are well established by admissions from Sheriff Sniff and reports from state and county watchdogs and independent auditors. RIVERSIDE has long been aware of the harm its deficient system causes to mental health inmates with serious needs. RIVERSIDE's failure to take action to ameliorate the conditions constitutes RIVERSIDE'S deliberate indifference to decedent's mental health needs.

39. Persons with mental health problems in Defendant RIVERSIDE's custody face a substantial risk of harm from violence at the hands of other incarcerated people due to its policy and practice of failing to adequately screen, supervise, and classify people in its custody. Vulnerable individuals, like decedent herein, are regularly assaulted and victimized by other individuals in the facilities because Defendants have failed to take reasonable measures to protect them. Because of this, Defendants

RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN are deliberately indifferent to the danger of assault faced by people, such as the decedent herein, with mental health needs in their custody.

40. Defendant RIVERSIDE does not adequately classify and assign people to housing locations where they will be safe from injury and violence. Individuals who are incompatible are regularly housed together. Here, decedent, an inmate with serious mental health needs, was housed with Richard Lee Thomas, an inmate who faced serious criminal charges including murder. Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN knew that Thomas posed a risk of serious harm or death to the decedent. However, defendants were deliberately indifferent to this danger of serious harm or death to the decedent.

41. Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN failed to properly assess, treat, care for, supervise, and monitor decedent as an inmate at the Southwest Detention Center. Decedent, a prisoner in the mental health ward of RIVERSIDE'S jail, died as a result of being beaten and strangled by his cellmate. Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN acted with deliberate indifference to the decedent's safety. The defendants knew, or should have known about the dangerous violent propensities of the cellmate, but disregarded the risk by placing him in the decedent's cell and thereafter failed to adequately respond to the resulting attack. The defendants also knew, or should have known of the decedent's propensities in his character that would cause a serious risk of harm by others not aware of or not inclined to tolerate decedent's paranoia schizophrenia behavior.

42. At all times, Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN owed a duty to the decedent to care for, protect, supervise, monitor and ensure that his constitutional rights were protected.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Defendants breached their duties owed to the decedent, which was a substantial factor in causing the decedent's death.

## CLAIMS FOR RELIEF

### First Cause of Action

### (Fourteenth Amendment - Cruel and Unusual Conditions, 42 U.S.C. § 1983)

### Against All Defendants

43. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

44. By the policies and practices described herein, Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN subjected decedent to a substantial risk of serious harm and injury from inadequate mental health care, screening, supervision, monitoring, violence between prisoners, and violated his right to basic human dignity and to be free from cruel and unusual conditions under the Fourteenth Amendment to the United States Constitution. These policies and practices have been and continue to be implemented by Defendant RIVERSIDE and its agents, officials, employees, and all persons acting in concert under color of state law, in their official capacity, and are the proximate cause of the decedent's death and deprivation of rights secured under the Fourteenth Amendment.

45. Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN have been and are aware of all of the deprivations complained of herein, and have condoned or have been deliberately indifferent to such conduct.

46. Defendants' RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN deliberate indifference to the needs, supervision, monitoring, classification, and housing of the decedent as an inmate with mental health needs was a substantial factor in causing the decedent's death.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**Second Cause of Action**

**(Eighth Amendment – Cruel and Unusual Punishment, 42 U.S.C. § 1983)**

**Against All Defendants**

47. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

48. By the policies and practices described herein, Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN subjected decedent to a substantial risk of serious harm and injury from inadequate mental health care, screening, supervision, monitoring, violence between prisoners, and violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. These policies and practices have been and continue to be implemented by Defendant RIVERSIDE and its agents, officials, employees, and all persons acting in concert under color of state law, in their official capacity, and are the proximate cause of the decedent's deprivation of rights secured under the Eighth Amendment.

49. Defendants' RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN deliberate indifference to the needs, supervision, monitoring, classification, and housing of the decedent as an inmate with mental health needs was a substantial factor in causing the decedent's death.

**SUPPLEMENTAL CLAIMS**

**THIRD CAUSE OF ACTION – STATE LAW**

**(For Negligence/Wrongful Death pursuant to CCP §377.60 et seq.)**

**Against All Defendants**

50. Plaintiff re-alleges and incorporates by reference the information set forth in the preceding paragraphs as though fully set forth herein.

51. Pursuant to California *Government Code* §910 et seq., Plaintiffs timely filed a Claim for Damages with the County of Riverside on February 1, 2016.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiff received notification of Rejection of Claim as of February 25, 2016, upon which Plaintiff had six (6) months from that date to file a court action. Plaintiff has complied with this timeline.

52. Plaintiff invokes the pendant jurisdiction of this Court to hear this claim.

53. Pursuant to California *Government Code* §815.2, Defendant RIVERSIDE is liable for injury proximately caused by an act or omission of its employees within the scope of his/her employment if the act or omission would have given rise to a cause of action against that employee or his personal representative. Section 815.2's "[v]icarious liability is a primary basis for liability on the part of a public entity, and flows from the responsibility of such an entity for the acts of its employees under the principle of respondeat superior." (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.).

54. Pursuant to California *Government Code* §820(a), Defendants MARTIN, ZANETEL, OVERTON, and MARTIN are liable for their individual torts to the same extent as private persons. No privileges or immunities exist to exonerate these defendants from their actions herein.

55. At all times herein mentioned, Defendants RIVERSIDE and Defendants MARTIN, ZANETEL, OVERTON, and MARTIN owed a duty to decedent to not endanger his life or liberty, to use appropriate tactics and procedures and to follow an appropriate custom and practice regarding persons in the same situation as decedent.

56. Said defendants breached their duty of care to decedent through their acts and failures to act, thereby proximately causing decedent's death, and depriving Plaintiffs of decedent's love, society, companionship, comfort, protection, services and support.

57. As a proximate, legal and direct result of the above mentioned conduct of the defendants, an each of them, Plaintiffs have suffered significant damages.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Case 5:16-cv-01820-TJH-KK   Document 1   Filed 08/24/16   Page 13 of 13   Page ID #:13

## PRAYER

Wherefore, Plaintiffs pray for judgment as follows:

1. For all available general damages according to proof;
2. For all available special damages according to proof;
3. Loss of earnings and earning capacity according to proof;
4. Attorneys' fees according to proof;
5. Costs of suit incurred herein; and
6. For exemplary and punitive damages as to the individual defendants, only;
7. For any other available relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

DATED: August 24, 2016                    SPRAY, GOULD & BOWERS LLP

_____
DARREN M. HARRIS
Attorney for Plaintiffs